UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDOLPH MOUSSEAU,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO.   C04-5292RJB

REPORT AND RECOMMENDATION

Noted for September 9, 2005

    Plaintiff, Randolph Mousseau, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

    Plaintiff currently is forty-seven years old.[1] Tr. 71. He has a general equivalency diploma and past work experience as a hardwood floor installer, finisher, heavy machinery operator, and maintenance worker.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

Tr. 18, 114, 119, 122, 142, 157.

Plaintiff filed applications for disability insurance and SSI benefits on January 19, 2000, and June 28, 2001, respectively, alleging disability as of August 1, 1998, due to a bulging disc in his lower back, severe neck, shoulder and back pain, partial lung removal in both lungs, and breathing problems. Tr. 18, 104, 113 151, 424. Both applications were denied initially and on reconsideration. Tr. 71-73, 75-82, 85-87, 429-33, 436-39. Plaintiff requested a hearing, which was held on September 12, 2002, before an administrative law judge ("ALJ"). Tr. 27. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 27-70.

On January 28, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease of the cervical spine with radicular symptoms (status post fusion,) low back pain with radicular symptoms, emphysema, nasal valve obstruction, sinus problems, and headaches;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a significant range of sedentary work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 22, 25-26. Plaintiff's request for review was denied by the Appeals Council on March 29, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 6-8; 20 C.F.R. §§ 404.981, 416.1481.

On May 20, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of disability insurance benefits, or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ failed to provide "clear and convincing" reasons for rejecting the opinion of Dr. Lynn L. Staker, one of plaintiff's examining physicians;

(b) the ALJ improperly rejected plaintiff's subjective complaints;

(c) the ALJ erred in assessing plaintiff's residual functional capacity;

(d) the ALJ erred in finding plaintiff capable of performing other jobs existing in

REPORT AND RECOMMENDATION
Page - 2

significant numbers in the national economy; and

(e) the ALJ should have determined whether it was appropriate to re-open two prior applications for disability insurance and SSI benefits plaintiff filed on December 27, 1999.

For the reasons set forth below, the undersigned recommends the ALJ's decision be reversed and remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Properly Evaluated the Opinion of Dr. Staker

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."

Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's findings regarding the opinions of Dr. Staker, one of his examining physicians,[2] concerning his ability to work.  Dr. Staker first saw plaintiff in late March 2000.  At that time, she diagnosed him with a bulging disc and cervical discogenic disease, resulting in lumbar discogenic and chronic neck, arm and leg pain, and moderate impairments in his work-related abilities. Tr. 255, 310.  Dr. Staker, however, did not deem plaintiff's condition to be "surgical," and felt that while he could perform sedentary work, his "medical problems" would "keep him from doing" the type of "heavy labor" he did in

---

[2]In his opening brief, plaintiff refers to Dr. Staker as an examining physician. Plaintiff's Opening Brief, p. 10.  In his reply brief, however, plaintiff refers to Dr. Staker as "the treating physician." Plaintiff's Reply Brief, p. 1.  Although plaintiff did visit with Dr. Staker on a number of occasions, each of those visits appears to have been initiated at the behest of the Washington State Department of Social and Health Services for disability evaluation purposes. See Tr. 253-56, 305-11, 412.  Accordingly, the undersigned finds it more appropriate to view Dr. Staker as an examining physician (i.e., one who examines but does not treat the claimant), than as a treating physician (i.e., one who is employed to cure the claimant). Lester, 81 F.3d at 830; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

REPORT AND RECOMMENDATION
Page - 4

1  his prior work. Tr. 310-11.

2       Dr. Staker examined plaintiff again in mid-July 2000. She found him moderately impaired due to his
3  bulging disc and lumbar discogenic pain, and once more stated that he would be capable of performing
4  sedentary work. Tr. 254, 308. Similar diagnoses were made in late February 2001, as well. Tr. 307. At that
5  time, Dr. Staker opined that plaintiff's situation was "not surgical," that there was "no curative treatment
6  available for him," that he "would have trouble doing heavy-duty manual labor," and that he "should
7  participate in some sort of vocational rehabilitation." Id.

8       In late February 2002, Dr. Staker diagnosed plaintiff with "[c]ervical disc protrusions at multiple
9  levels with increasing headaches, radiculitis and neck pain," as well as "[c]hronic lower back pain and some
10 intermittent radicular symptoms." Tr. 305. She also reiterated that he was "incapable of doing any heavy-
11 duty work" at that time, that he could "only do sedentary work," and that it was "doubtful" he was
12 "employable in his present condition" since it was not "medically stable." Tr. 305-06. Dr. Staker provided
13 substantially similar diagnoses in late August 2002, further opining that plaintiff "should work with
14 vocational rehabilitation," that he "would have difficulty holding a job unless it was sedentary in nature,"
15 and that it was "going to be difficult to get" him "employable with the chronic nature of the pain and
16 problem" he had. Tr. 412.

17      With respect to Dr. Staker's opinions, the ALJ found as follows:

18 > Dr. Staker has opined that the claimant was disabled, but she has also recommended
19 > vocational rehabilitation, suggesting that she thinks he is disabled from what he was
> doing, but that there is other work that the claimant could do. Her opinion that he is
> limited to sedentary work is, therefore, supportable, and I accept her opinion that the
20 > claimant is limited to sedentary work.

21 Tr. 23. Plaintiff argues that Dr. Staker's opinion that he was unemployable as of February 2002, and that
22 the chronic nature of his pain would prevent him from maintaining work was uncontradicted by any other
23 examining physician in the record, and that the ALJ failed to provide "clear and convincing" reasons for
24 rejecting it. The undersigned disagrees.

25      First, while technically it is true that no other examining physician in the record specifically has
26 stated that plaintiff was not unemployable as of February 2002, Dr. Staker's opinions must be read in the
27 context of the medical evidence in the record as a whole, much of which does contradict any opinion she
28 has offered that plaintiff is disabled. For example, in early December 1999, Dr. Patrick J. Halpin, another

REPORT AND RECOMMENDATION
Page - 5

1  physician who has examined plaintiff, opined in relevant part that:

2  > I think that there are no objective findings to support a prolonged disability situation
3  > although [plaintiff] does not seem to think that he has any skills to do anything other
4  > than hard and heavy manual labor. I think it is reasonable that he be considered for a
   > lighter kind of work and it is probably reasonable to try to get him off of the heavy
   > manual labor.

5  Tr. 236. In late March 2000, Dr. Halpin stated that his "prior recommendation which was for a lighter kind

6  of work than heavy work would still be appropriate." Tr. 252. The reports and opinions of other medical

7  sources in the record further support the ALJ's findings regarding Dr. Staker's opinions. Thus, in mid-July

8  1999, plaintiff was found to have only mild to moderate limitations stemming from his back impairments,

9  resulting in a restriction to sedentary work. Tr. 231-32.

10    While in late February 2000, a physician's assistant did find plaintiff severely limited (defined as the

11  "[i]nability to perform one or more basic work-related activities") in his ability to perform at least half-time

12  in a day-to-day work setting (Tr. 257-58), physician's assistants are not an "acceptable medical" sources,

13  and therefore their opinions may be given "less weight" than to those of licensed physicians. See Gomez v.

14  Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (acceptable medical sources include licensed physicians); 20

15  C.F.R. § 404.1513(a), (d); 20 C.F.R. § 416.913(a), (d). In any event, another such source found him

16  capable of performing light work by another such source that same month. Tr. 242-49.

17    In late July 2001, Dr. David L. Deutsch, a non-examining consulting physician, opined that plaintiff

18  was capable of performing a significant range of light work. Tr. 259-66. A neurological examination of

19  plaintiff performed by Dr. William J. Stump in late November 2001, was fairly unremarkable. Tr. 357-59.

20  Similarly unremarkable clinical findings were made by Dr. Jongsoo Park in January and February 2002. Tr.

21  415, 420-21. Dr. Park further recommended that plaintiff try only "conservative means of treatment" for

22  his pain symptoms. Tr. 415.

23    It is true that Dr. Staker is a specialist, and that in general more deference is given to the "opinion of

24  a specialist about medical issues related to his or her area of specialty." Benecke v. Barnhart, 379 F.3d 587,

25  594 n.4 (9th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). However, Dr. Halpin, who, as discussed

26  above, opined that plaintiff was capable of performing "a lighter kind of work than heavy work," also is an

27  orthopedic specialist. Tr. 252; see also Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of

28  examining physician is based on "independent clinical findings," it is within ALJ's discretion to disregard

REPORT AND RECOMMENDATION
Page - 6

1  conflicting opinion in other examining physician's diagnosis).

2      In his reply brief, plaintiff argues the ALJ also erred in rejecting that portion of Dr. Staker's opinion
3  regarding his ability to sustain work-related activities on a regular and continuing basis.  Plaintiff, however,
4  does not set forth with any specificity that portion of Dr. Staker's opinion regarding sustainability he states
5  the ALJ improperly rejected.  While Dr. Staker did feel plaintiff would have difficulty finding employment
6  due to medical instability and the chronic nature of his pain, she also clearly opined that he "would have
7  difficulty holding a job <u>unless</u> it was sedentary in nature." Tr. 306, 412 (emphasis added).  To the extent
8  that such statements are conflicting or ambiguous, furthermore, it is solely the ALJ's duty to resolve such
9  ambiguity or conflict. <u>Reddick</u>, 157 F.3d at 722; <u>Sample</u>, 694 F.2d at 642.

10      Plaintiff argues the ALJ should have contacted Dr. Staker to obtain her opinion on whether he can
11  sustain employment given the chronic nature of his pain.  The ALJ's duty to further develop the record,
12  however, "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for
13  proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001).  Plaintiff has not
14  shown that the evidence in this case is sufficiently ambiguous or inadequate to allow for a proper evaluation
15  of that evidence by the ALJ.  Indeed, it would appear that plaintiff cannot do so, in light of the findings and
16  reports of the other medical sources in the record discussed above regarding his ability to work.  In any
17  event, because plaintiff raised this issue for the first time in his reply brief (Plaintiff's Reply Brief, pp. 4-6),
18  defendant has not had the opportunity to respond.  Accordingly, the undersigned does not find the ALJ
19  erred in her duty to develop the record.

20  II.    <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility</u>

21      Questions of credibility are solely within the control of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d
22  639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination. <u>Allen</u>, 749
23  F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is
24  based on contradictory or ambiguous evidence. <u>Id.</u> at 579.  That some of the reasons for discrediting a
25  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
26  as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th
27  Cir. 2001).

28      To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

REPORT AND RECOMMENDATION
Page - 7

what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part for the following reason:

> At the hearing he said that he could not grasp or hold items, but there is no record of complaints of numbness or difficulty holding items. Clearly, he has been able to handle tools to work on his car.

Tr. 23. Plaintiff argues the ALJ erred in so finding, asserting that the reports from Dr. Staker repeatedly state that he complained of paresthesias in his upper extremities. While it is true the record indicates that plaintiff complained of paresthesias in his upper extremities to Dr. Staker (Tr. 305, 307-08, 310, 412), all of his neurologic and sensory examinations have been essentially normal (Tr. 269-70, 273-74, 277-78, 305, 307, 358-59, 421). There also is no mention in the record of plaintiff complaining of or demonstrating difficulty holding items, and he has been found to have no manipulative restrictions. Tr. 245, 262. Further, although the fact that plaintiff was noted to have been working on his car in mid-April 2001 (Tr. 280) does not in itself establish that he had no restrictions in the use of his hands or arms, it is evidence that any such restrictions are certainly less than disabling.

The ALJ also discounted plaintiff's credibility in part because:

> He said that his headaches significantly interfere with his concentration, but he has not sought a mouth appliance that could relieve bruxism, which could be a cause of his headaches. Also he describes his headaches as dull, not extreme.

Tr. 23. Plaintiff argues the record shows he does suffer from chronic and severe headaches, and that these headaches have affected his ability to concentrate. Again, it is true that the record shows that plaintiff has reported having chronic and severe headaches. Tr. 305, 357, 412, 415. There are no objective findings in

REPORT AND RECOMMENDATION
Page - 8

the record, however, to indicate that he has any problems with concentration.

The record, furthermore, indicates physical therapy significantly reduced the frequency, intensity and duration of plaintiff's headaches. Tr. 295, 297-98. Even so, as discussed below, the ALJ gave him the benefit of the doubt, and limited him to unskilled, simple work. Tr. 23. In addition, while bruxism was not the only suggested cause of his headaches (Tr. 305, 355-56, 359, 415), plaintiff was informed that bruxism "certainly" could cause headaches, treatment for which could include "a trial of an oral appliance." Tr. 316; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment can cast doubt on sincerity of claimant's pain testimony).

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Here, the ALJ found as follows:

> In May of 2002, [plaintiff] told Dr. Tan that he liked to go hiking and mountain biking. In November of 2001 he said that he could stand for an hour and sit for 90 minutes, but he testified to much less ability than this. The claimant is able to care for his own activities of daily living, and he was working on his car in April of 2001.

Tr. 23, 280, 352. Hiking, mountain biking and working on cars certainly are activities indicating an ability to function at a much higher level than plaintiff has claimed. Further, although the record does not indicate the exact extent to which plaintiff engaged in these activities, the ability to engage in such activities are not at all consistent with an alleged inability to perform even sedentary work.

The ALJ also may consider the claimant's inconsistent statements as evidence of lack of credibility. Smolen, 80 F.3d at 1284. For example, the ALJ noted the inconsistency between plaintiff's testimony and his prior reported ability to sit and stand. In addition, although plaintiff has reported that he cannot "stick with" any activity for very long at one time (Tr. 163), he has reported being able to go grocery shopping on a weekly basis, being able to complete household chores such as dusting, vacuuming and doing the dishes within an hour, and being able to drive for up to one hour at a time (Tr. 164). Thus, the ALJ did not err in finding plaintiff's activities to be inconsistent with his alleged inability to engage in them.

Finally, the ALJ noted that Dr. Staker's opinion that plaintiff was limited to sedentary work is not

consistent with his allegation of disability. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).  As discussed above, furthermore, the other objective medical findings in the record indicates plaintiff was capable of performing at the sedentary level, with no evidence of any significant manipulative restrictions or limitations in concentration.  While plaintiff also argues the ALJ failed to consider the evidence regarding his difficulties with sitting, standing and walking, the ALJ did include significant limitations in these areas in her assessment of his residual functional capacity that accords with his previously reported ability to function in those areas. Tr. 23.

III.   The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant could lift ten pounds occasionally, sit 60-90 minutes at a time, stand sixty minutes at a time and walk 45 minutes at a time.  The claimant should not stand on concrete or hard wood and is limited to unskilled, simple work due to his headaches.  These limits are consistent with his own statements of his physical abilities as reported in exhibit 11F on page 2.

Tr. 23.  Plaintiff argues the ALJ erred in assessing his residual functional capacity by failing to consider a number of applicable Social Security Rulings.  More specifically, plaintiff argues the ALJ should have, but

REPORT AND RECOMMENDATION
Page - 10

1  failed to, follow these rulings, in light of the substantial evidence in the record regarding the limitations in
2  his ability to sit, stand or walk for prolonged periods, use his hands and arms, and concentrate.
3       The issue of whether or not the ALJ did or should have followed these various rulings, however, is
4  moot. The substantial medical evidence in the record, as discussed above, indicates plaintiff did not have
5  significant limitations in his ability to use his hands or arms. With respect to plaintiff's alleged significant
6  limitations in his ability to concentrate, although the substantial medical evidence in the record does not
7  support his allegations, the ALJ gave him the benefit of the doubt, and limited him to unskilled, sedentary
8  work. In addition, the ALJ also adequately accounted for plaintiff's alleged restrictions in his ability to sit,
9  stand and walk, by limiting the amount of time he can do each activity in accordance with his own reported
10 ability to do so. Plaintiff argues in his reply brief that the ALJ also failed to discuss whether his need for a
11 sit/stand option can be accommodated by regularly scheduled breaks. However, because plaintiff did not
12 raise this issue in his opening brief, it will not now be considered here.
13      Plaintiff further argues the ALJ erred in not considering his respiratory impairments. Although the
14 ALJ did not specifically address those impairments in assessing his residual functional capacity and the
15 medical evidence in the record does indicate plaintiff suffers from such impairments (Tr. 315-16, 326, 331,
16 350-52, 409, 413), there is no indication that they have resulted in any significant work-related limitations.
17 Thus, while the ALJ may have erred in not discussing plaintiff's respiratory impairments, such error was
18 harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir.
19 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding
20 ALJ committed harmless error).
21 IV.   The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process
22      If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation
23 process the ALJ must show there are a significant number of jobs in the national economy the claimant is
24 able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e),
25 416.920(d)-(e). The ALJ can do this through the testimony of a vocational expert or by reference to the
26 Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock
27 v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).
28      An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

REPORT AND RECOMMENDATION
Page - 11

1  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d
2  1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the
3  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
4  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by
5  the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that
6  description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
7  (because ALJ included all limitations that he found to exist, and those findings were supported by
8  substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

The ALJ posed the following hypothetical question to the vocational expert:

> I have an individual who is currently 44 years old. This person graduated from high school, first obtaining a GED and then going back and completing his high school diploma. . . . This person has limits as a result of injury that affect his ability to work. For the purpose of my first hypothetical question, this person can sit for 60 to 90 minutes at a time, stand up to 60 minutes at a time, walk for 25 minutes at a time. He doesn't have any lifting -- I would put him not at more than lifting about ten pounds.

Tr. 57. Based on that hypothetical question, the vocational expert testified that plaintiff could perform the jobs of "receptionist, information clerk," self-service station attendant, and printed circuit board ("PCB") assembler. Tr. 58. The vocational expert testified that plaintiff could do each of these jobs, even though the Dictionary of Occupational Titles ("DOT") defines those or similar jobs as requiring the ability to do more than sedentary, unskilled work. Tr. 62. The ALJ relied on the vocational expert's testimony to find plaintiff not disabled at step five of the disability evaluation process. Tr. 24-25.

Plaintiff first argues the ALJ failed to include all relevant limitations in the hypothetical question she posed to the vocational expert. Specifically, plaintiff asserts the ALJ did not consider any limitations in his ability to sit, stand and walk, use his hands and arms, concentrate, and persist in performing tasks, or any limitations resulting from his respiratory impairments, in determining whether he is able to perform other work existing in significant numbers in the national economy. The ALJ, however, did not err in assessing plaintiff's residual functional capacity, which, as discussed above, either properly excluded or adequately took into account the above alleged limitations. Because the hypothetical question mirrors the residual functional capacity assessment provided by the ALJ, no error was committed here.

On the other hand, plaintiff also argues the ALJ erred in not providing a reasonable explanation for the conflict between the testimony provided by the vocational expert and the job definitions contained in the

DOT. The undersigned agrees. Before an ALJ may rely on evidence obtained from a vocational expert to support a disability determination, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts" between the evidence provided by the vocational expert and information contained in the DOT. SSR 00-4p, 2000 WL 1898704 *1, *4.

The ALJ also is required to determine whether such evidence "provides a basis for relying" on the vocational expert testimony "rather than on the DOT information." Id. at *2. This explanation must be set forth in the ALJ's determination. Id. at *4. Here, although the vocational expert did provide testimony as to why he disagreed with the DOT's definitions or questioned their applicability (Tr. 58-68), the ALJ did not provide any explanation in his decision as to why he chose to adopt that testimony over the information contained in the DOT. As such, the ALJ erred.

V.   Re-Opening of Plaintiff's Prior Applications

The doctrine of *res judicata* "should not be rigidly applied in administrative proceedings." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (*res judicata* applied less rigidly to administrative proceedings than to judicial proceedings). While administrative *res judicata* also should not be "applied so as to 'contravene an overriding public policy or result in manifest injustice,'" it is only "[w]here the record is patently inadequate to support the findings the ALJ made," that its application will be "tantamount to a denial of due process." Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985) (quoting Thompson v. Schweiker, 665 F.2d 936, 940-41 (9th Cir. 1982)).

The Commissioner thus may apply administrative *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." Lester, 81 F.3d at 827. In general, the Commissioner's refusal to reopen a decision regarding an earlier period "is not subject to judicial review." Id. This is because, once an administrative decision becomes final, the Commissioner's decision to reopen a disability claim is "purely discretionary." Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985). In addition, because a discretionary decision is not a "final decision" within the meaning of 42 U.S.C. § 405(g), the Commissioner's refusal to reopen that decision "is not a 'final' decision subject to judicial review." Id. (citations omitted).

The exception to the above rule is "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester, 81 F.3d at 827; Lewis v. Apfel, 236

REPORT AND RECOMMENDATION
Page - 13

F.3d 503, 510 (9th Cir. 2001).  If "such a *de facto* reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review." Lester, 81 F.3d at 827.  However, "where the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman, 767 F.2d at 589 (citing McGowen v. Harris, 666 F.2d 60, 68 (4th Cir. 1981)).

On December 27, 1997, plaintiff filed applications for disability insurance and SSI benefits. Tr. 17.  These applications are not included in the record.  Plaintiff's counsel states that she requested copies of the applications, but was not provided with, nor does she have, them. Plaintiff's Opening Brief, p. 6.  Plaintiff nevertheless argues that those applications should be re-opened, because the ALJ discussed evidence that relates back to them, and questioned him regarding his impairments and inability to work during that time period.  The undersigned disagrees.  Because neither of those applications are part of the record before the court, it is not at all clear to the court what has happened to them.  In other words, the court does not have any information as to whether the Commissioner issued a final decision regarding them, or, for example, whether plaintiff failed to fully pursue those applications.  Thus, there is no indication in the record that a prior decision even exists to re-open, were the undersigned inclined to do so.

VI.   This Case Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain as to whether plaintiff is capable of performing other work at step five of the disability evaluation process, this case should be remanded for further administrative proceedings.  Specifically, on remand, before relying on the testimony of the vocational expert regarding the jobs he identified, the ALJ shall explain why such reliance is proper.

REPORT AND RECOMMENDATION
Page - 14

CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 9, 2005**, as noted in the caption.

DATED this 16th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge